[No. 3205.]

## N. A. HOBBS *v.* THE STATE.

1. ASSAULT WITH INTENT TO MURDER—HEARSAY TESTIMONY.—The defense in a trial for assault to murder proposed to prove by a witness that an officer, a short time before the shooting, directed one of the parties shot to take the other party from a saloon to his home because he was intoxicated. *Held*, that such evidence was clearly hearsay and irrelevant, and was properly excluded.

2. SAME—EVIDENCE.—The defendant was a watchman at a railroad freight depot, and in the night time fired upon and wounded two men passing near the depot. *Held*, that, as tending to throw light upon the question of motive in shooting, and as having a tendency to mitigate, if not to justify, the conduct of the defendant in shooting, he was entitled to prove that there had been a great deal of car breaking and stealing from the cars at the depot where he was on duty as guard.

3. SAME.—The competency as evidence of a defendant's explanation, made directly after the commission of the alleged offense, depends entirely upon whether or not such explanation, if material, is also a part of the *res gestæ*. In determining whether or not such explanation is or is not a part of the *res gestæ*, the test is, were the declarations the facts talking through the party, or the party talking through the facts? In this case the bill of exceptions taken to the rejection of the proposed explanation fails to disclose what that explanation was. Under such circumstances, this court cannot pass upon the question of materiality. See the opinion *in extenso* on the question.

4. SAME—CHARGE OF THE COURT.—See the opinion *in extenso* for a state of case wherein the court below should have instructed the jury as to the law of aggravated assault and battery.

5. SAME—SELF-DEFENSE—MANSLAUGHTER.—Upon the question of self-defense, the trial court properly charged that the defendant's right of self-defense ceased when his danger, real or apparent, ceased. But note the opinion for circumstances under which, if death had resulted from an assault, the offense would not have been of a grade higher than manslaughter.

6. SAME—AGGRAVATED ASSAULT AND BATTERY—FACT CASE.—It is the duty

of the trial court to instruct the jury upon every phase of case suggested by the proof, however slight may be the testimony supporting it. See the statement of the case for evidence demanding a charge upon the law of aggravated assault and battery.

Appeal from the District Court of Anderson. Tried below before the Hon. J. J. Perkins.

The conviction was for an assault with intent to murder one S. R. Montgomery and one J. M. Whiteley, in Palestine, Anderson county, Texas, on the twenty-first day of September, 1882. The penalty awarded was a term of five years in the State penitentiary.

J. M. Whiteley was the first witness for the State. He testified in substance that on the night of September 21, 1882, he and Montgomery left their boarding house, west of the railroad track, in Palestine, going to town. After going to several places, they entered Amson's saloon, remaining there, with others, until near eleven o'clock, when, arm in arm, they started to their boarding house, a quarter of a mile distant. They took the line of the railroad track as being the shorter route, as they and others had often done before. They reached a point beyond the switches, and were nearing the water tank, when some one to their right called out: "Where are you going?" Montgomery, who was nearest, replied: "It is none of your business." A few steps further on witness and Montgomery encountered two men—the defendant, with a dark, or burglar's, lantern, and Mr. Hill, with a white lantern. Defendant turned his light on Montgomery's face, and almost simultaneously brought a pistol down in his right hand, saying: "I will show you whether it is any of my business." Witness at that time had an umbrella under his left arm, and his right akimbo, the hand resting on his breast. Montgomery's left hand was in witness's right arm. As defendant brought down the pistol, Montgomery jerked his hand from witness's arm and caught at the pistol. Defendant fired instantly, the ball passing into Montgomery's arm above the elbow and coming out at the shoulder, powder burning the coat. Montgomery stepped to one side and said: "I am shot." Witness stepped to the other side of defendant, when defendant again fired, striking witness in the left wrist. As the witness was passing on from the defendant, the defendant fired again, striking witness in the left knee from the rear, and bringing him to the ground. The defendant then said: "I am the watchman

here, and I will have you understand that when I ask who you are, you must tell me." He then walked off.

Neither the witness nor Montgomery were armed at that time. Nothing more than stated by witness was said at the time. Defendant did not say that he was watchman until after he had shot witness and Montgomery. Witness knew that there was a night watchman for the freight cars, but at the time of the shooting he and Montgomery were forty or fifty steps from those cars, going south. The cars stood west. Witness did not then know defendant nor Hill, nor did they know him. Witness was taken home by some parties he did not know, after lying on the ground for some time. Witness now uses crutches, and supposes he is a cripple for life. Witness was an engineer employed at Dilley's foundry, Montgomery a locomotive engineer in the employ of the railroad company.

S. R. Montgomery, the next witness for the State, testified substantially as Whiteley did, and the State rested.

The defense first introduced J. C. Hill, who testified that he and defendant were guards at the Palestine railroad yards, and were on duty the night of the shooting. Defendant and the witness were near the tank when they heard two men approaching, talking loudly and noisily as if drinking. It was dark and the men had no lights. Witness had no light. When within twenty or thirty feet of them the defendant called out: "Who are you, and where are you going?" Montgomery replied: "It is none of your d—d business." Witness suggested to defendant that they be permitted to pass. Defendant said: "No, we ought to see who they are, and what they are doing here." Witness then stepped aside and defendant threw the light of his dark lantern on the faces of the men and said: "I am the guard here, and it is my business to know who you are and what you are doing." Montgomery replied: "D—n you, I'll show you who we are," making a quick movement and passing his hand to his right hip pocket. Witness could not see his left hand. At this time a shot was fired; another instantly followed, and the parties scattered and separated. A third shot was then fired, and Whiteley fell to the ground, just beyond Montgomery, who did not fall. Defendant went for Mr. Calloway, who with others came, and shortly the wounded men were taken away. Witness was armed but did not draw his pistol.

Policeman Frank Durham testified, for the defense, that he saw Montgomery and Whiteley at Amson's saloon a short while

before the shooting. Montgomery was getting pretty full of intoxicating liquor when he and Whiteley left. When witness heard the shooting he went rapidly to the depot and found that defendant had shot Montgomery and Whiteley. He arrested defendant.

W. P. Calloway, general freight agent in charge of the railroad yards at Palestine, testified, for the defense, that the defendant was a guard appointed to protect the yards and freight cars of the railroad. Witness was in his office when the shooting occurred. The defendant was the first to report the occurrence to him. Defendant suggested that witness go to the men while he went for a doctor, which was done. Defendant made a statement of the occurrence to the witness. This statement, however, the witness was not permitted to repeat. The wounded parties were being taken off when witness reached them.

Doctor G. S. West testified, for the defense, that he was called by the defendant to see the wounded men. There were no indications that the wounded men were drunk or had been drinking.

Mike Sano, bar tender at Amson's saloon testified, for the defense, that the two wounded men drank several schooners of beer at the saloon before the shooting, but neither of them was drunk.

The motion for new trial raised the questions involved in the opinion.

*J. Y. Gooch*, for the appellant.

*J. H. Burts*, Assistant Attorney General, for the State.

WILLSON, JUDGE. 1. It was not error to reject the testimony offered by the defendant to prove that the officer, Durham, a short time before the shooting, had told Whiteley to take Montgomery away from the saloon, and to his home, because he was intoxicated. This was hearsay and irrelevant. It was permissible for the defendant to prove that Montgomery and Whiteley, or either of them, was intoxicated on the occasion, and he was allowed to introduce such testimony.

2. We think the court erred in rejecting testimony offered by the defendant to show that, prior to the shooting, there had been a great deal of car breaking and stealing from the cars at the depot, where the defendant was on guard. This evidence would

have been competent and pertinent to throw light upon the motive or intent which actuated the defendant on the occasion of the shooting. It constituted a part of the circumstances of the case, and tended to elucidate the conduct of the defendant—if not to justify, perhaps to mitigate it. (Whart. Crim. Ev., secs. 23, 24.)

3. The defendant proposed to prove the explanation made by himself of the shooting a few minutes after it occurred. We are not informed by the bill of exceptions taken to the rejection of this proposed testimony what his explanation was, and hence we cannot judge of its materiality, and cannot say that the court erred in rejecting it. Such explanation may have been in accord with the testimony of the State's witnesses, and, if so, certainly its rejection did not injure the defendant, and would not be error, if error at all, of which he could complain. (*Davis* v. *The State*, 14 Texas Ct. App., 645.) If, in fact, the declarations made by the defendant were material, then their admissibility would depend upon whether or not they were part of the *res gestœ*. "Declarations made by a defendant in his own favor, unless part of the *res gestœ*, or of a confession offered by the prosecution, are not admissible for the defense. * * * It is otherwise when such declarations are part of the *res gestœ*. It is not, however, necessary that such declarations, to be part of the *res gestœ*, should be precisely concurrent with the act under trial. It is enough if they spring from it, and are made under circumstances which preclude the idea of design. The test is, were the declarations the facts talking through the party, or the party's talk about the facts. *Instinctiveness* is the requisite, and when this obtains, the declarations are admissible. (Whart. Crim. Ev., secs. 690, 691.)

"If the declarations appear to spring out of the transaction, if they elucidate it, if they are voluntary and spontaneous, and if they are made at a time so near to it as reasonably to preclude the idea of deliberate design, then they are to be regarded as contemporaneous." (*Booth* v. *The State*, 4 Texas Ct. App., 202; *Talliaferro* v. *The State*, 40 Texas, 523; *Brunet* v. *The State*, 12 Texas Ct. App., 521.) If, under the above stated rules defendant's explanation of the shooting constituted a part of the *res gestœ* of the same, he is entitled to have them before the jury as evidence. The question of the admissibility of such declarations is for the trial judge to determine, and the weight to which the same is entitled is a matter for the jury to decide.

4. In instructing the jury upon the law of the case, the learned judge did not submit the issue of aggravated assault and battery, and refused special instructions requested by the defendant embodying the law of manslaughter and aggravated assault and battery. Exceptions were taken by the defendant to the charge of the court because of said omission, and to the action of the court refusing special instructions asked. It was the opinion of the learned trial judge that the evidence did not raise the issue of aggravated assault and battery; that, if the parties shot had died from their wounds the homicide wound have been murder, or justifiable, and could not have been manslaughter. We must differ with him in this view of the case. By the testimony of the witness Hill, who was present and saw and heard what transpired on the occasion, it was proved, substantially, that the defendant threw his light on Montgomery and Whiteley and said to them: "I am the guard here, and it is my business to know who you are and what you are doing." Montgomery answered: "D—n you, I'll show you who we are"; at the same time he, Montgomery, made a quick movement and his right hand passed to his right hip pocket. As this was done, a shot was fired, and in an instant another shot was fired, and the parties then scattered and separated a few yards, and then the third shot was fired and Whiteley fell. Montgomery did not fall. Witness was on duty with the defendant, guarding the railroad yard from traspassers. This occurred about eleven o'clock at night, and the night was dark, and it occurred on the said railroad yard. It appears from other evidence in the case that one shot took effect in Montgomery's arm, one took effect in Whiteley's arm, and another in Whiteley's leg, and from the effects of this last shot Whiteley fell. When the shooting began the parties were close together. The first shot fired wounded Montgomery. Whiteley when shot was beyond Montgomery from the defendant, that is, Montgomery was between Whiteley and the defendant. When the defendant fired the last shot, which struck Whiteley in the leg, he, Whiteley, was walking off from the defendant.

This evidence presents the issue of self-defense in the shooting of Montgomery, and also the accidental shooting of Whiteley. Upon these issues the court very properly, and we think correctly, instructed the jury. But while these issues are presented, is there not another phase of the case which this testimony tends to establish? Suppose the evidence was not sufficient in the esti-

mation of the jury to show self-defense, but was sufficient to show violent demonstrations on the part of Montgomery, sufficient under the circumstances to excite in the mind of defendant sudden passion, rendering him incapable of cool reflection, and sufficient to excite such sudden passion in a person of ordinary temper, and that, acting under this sudden passion, arising from adequate cause, he did the shooting, then, while the defendant's act would not be justifiable, still it would not be an assault with intent to murder, but would be an aggravated assault and battery.

Again, the learned judge instructed the jury that the defendant's right of self-defense ceased when the danger, real or apparent, had ceased. This was correct. But suppose, in defending himself against a violent attack, or a supposed violent attack, he became excited by passion to such an extent as to render his mind incapable of cool reflection, and under this state of excitement he carried his right of self defense too far, used more force than was necessary to his protection, fired one or more shots after all real or apparent danger had ceased, but before his mind had had time to cool, and from wounds thus inflicted death had resulted, would this have been murder? We think not. Suppose the first shot fired by the defendant was justifiable, but that the two shots fired by him which struck Whiteley were fired after the danger, real or apparent, which threatened the defendant had ceased, but that he fired the said shots under the immediate influence of sudden passion, arising from the supposed deadly conflict in which an instant before he had been engaged, and fired them before he had had reasonable " cooling time," reasonable time to realize that he was no longer in any danger, would not this state of facts, if the shots had killed Whiteley, constitute manslaughter and not murder? We think a homicide under these circumstances would not be of a higher grade than manslaughter.

In our opinion the evidence fairly raises the issue of aggravated assault and battery. The evidence tending to support this phase of the case may be very slight, and perhaps not sufficient in the mind of this court or of the trial court to require serious consideration, yet this does not relieve the court from submitting the issue to the jury. It is for the jury to pass upon such issue, and determine whether or not the evidence sustains it. We think the evidence demanded a charge such as was requested

by the defendant, and that the court erred in not giving such a charge.

Because of the errors we have pointed out, the judgment is reversed and the cause is remanded.

*Reversed and remanded.*

Opinion delivered June 25, 1884.